# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| JASON L. HAJOSTEK, | CV 20-185-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jason L. Hajostek ("Hajostek") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 7.)

Presently before the Court is Hajostek's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 11.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 11, 12, 16.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds the case should be **REMANDED** for further administrative proceedings.

## I.      Procedural Background

Hajostek completed his applications for DIB and SSI on August 13, 2018, alleging disability beginning on July 28, 2018.  (A.R. 220-35.)  A hearing was held telephonically on June 18, 2020, in Billings, Montana, before Administrative Law Judge Michele M. Kelley (the "ALJ").  (A.R. 46, 49.)  On July 6, 2020, the ALJ issued a written decision finding Hajostek not disabled.  (A.R. 20-40.)  Hajostek requested review of the decision by the Appeals Council, and on July 10, 2019, the Council denied his request for review.  (A.R. 158-63.)  Thereafter, Hajostek filed the instant action.

## II.     Legal Standards

### A.      Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may

reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d

653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.     Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Hajostek's claim. At step one, the ALJ found that Hajostek had not engaged in substantial gainful activity since his alleged onset date of July 28, 2018. (A.R. 22.) At step two, the ALJ found Hajostek had the following severe impairments: degenerative joint disease of the bilateral shoulders; degenerative disc disease of the cervical spine, status post fusion in 2019; degenerative disc disease/status post compression fractures of the thoracic spine; chronic obstructive pulmonary disease; and mild non-ischemic cardiomyopathy. (A.R. 23.) At step three, the ALJ found that Hajostek did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (A.R. 26.)

Before considering step four, the ALJ determined Hajostek had the residual

functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in
> that he can lift/carry/push/pull 20 pounds occasionally, and 10 pounds
> frequently.  Pushing/pulling can be accomplished on a frequent basis.  He
> can stand and/or walk for about 4 hours in an 8-hour workday, and can sit
> for about 6 hours in an 8-hour workday.  The claimant can frequently reach
> in front or laterally with the bilateral upper extremities.  He can occasionally
> reach overhead with the bilateral upper extremities.  He can frequently climb
> ramps or stairs.  He can frequently balance, stoop, kneel, crouch, and crawl.
> He can never climb ladders, ropes, or scaffolds.  He must avoid concentrated
> exposure to temperature extremes, noise (i.e., he can tolerate noise levels of
> 3/5 as defined in the Selected Characteristics of Occupational Titles, but
> none greater), vibration, and fumes, odors, dust, gases, or poor ventilation.
> He must avoid even moderate exposure to hazards, including wet, slippery,
> or uneven surfaces, unprotected heights and dangerous machinery.  He must
> have ready access to bathroom facilities during normal work breaks, or
> every two hours.  He requires a single point cane for balance.  He can
> understand, remember, and carry out simple, detailed, and complex tasks.
> He can maintain attention, concentration, persistence, and pace for such
> tasks for 8-hour workdays and 40-hour workweeks.  He can tolerate
> interaction with supervisors, co-workers, and the public.  He can tolerate
> usual work situations.  He can tolerate changes in routine work settings.

(A.R. 33.)

At step four, the ALJ found that Hajostek was unable to perform any past

relevant work.  (A.R. 38.)  Finally, at step five, the ALJ found that based on

Hajostek's age, education, work experience, and residual functional capacity, there

were jobs that existed in significant numbers in the national economy that he could

perform, such as a document preparer, food and beverage order clerk, or credit

information clerk.  (A.R. 39.)  Accordingly, the ALJ found Hajostek not disabled.
(A.R. 40.)

## IV.    Discussion

Hajostek presents the following issues for review[1], whether the ALJ: (1)
properly evaluated the medical opinions of Dr. Flook and Dr. Perry; (2) failed to
include all of his severe impairments at step two; (3) properly discounted his
subjective symptom testimony; (4) failed to consider his ability to sustain work
activities on a regular and continuous basis; and (5) failed to incorporate all of his
impairments into the vocational expert's hypothetical.  The Court will address each
in turn.

### A.    Medical Opinion Evidence

Hajostek argues the ALJ failed to properly consider the medical opinions of
Dr. Flook and Dr. Perry.  (Doc. 11 at 21-22.)  The Commissioner counters these
providers were appropriately evaluated.  (Doc. 12 at 20-25.)

Because Hajostek applied for benefits after March 27, 2017, the ALJ
considered the medical evidence under a new set of regulations regarding the
evaluation of medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c.  The

---

[1] Hajostek's "statement of issues presented for review" is difficult to reconcile with
his briefing as various arguments are interspersed at random throughout his brief.
Accordingly, the Court has restated the issues as articulated here.

new regulations eliminated the use of the term "treating source" and eliminated the traditional hierarchy between treating, examining, and non-examining physicians. *Id.* Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ is directed to consider medical opinions or prior administrative medical findings together according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is generally not required to explain how the remaining factors were considered, except when deciding among differing yet equally persuasive opinions or findings on the same issue. *Id.*

The Ninth Circuit has not yet addressed whether its precedent requiring the ALJ to provide "clear and convincing" or "specific and legitimate reasons" for rejecting medical opinions remains viable given the elimination of the hierarchy. *See Titus v. Saul*, 2021 WL 275927, at *6 (C.D. Cal. Jan. 26, 2021) (collecting cases noting it is unclear whether the new regulations will alter the Ninth Circuit's

8

standards for evaluating medical opinions); *Chase v. Saul*, 2022 WL 819680, at *4 (D. Mont. Mar. 18, 2022). Nevertheless, even under the new regulations, "the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive." *Mark M.M. v. Saul*, 2020 WL 2079288, at *4 (D. Mont. Apr. 29, 2020).

In her decision, the ALJ considered both Dr. Flook's and Dr. Perry's records. The Court will address each in turn.

### 1.    Dr. Flook, MD

Hajostek first argues that the ALJ "ignored [his] difficulty with dizziness and imbalance from vestibular vertigo" and ignored Dr. Flook's opinion that he could not perform his job as a mechanic. (Doc. 11 at 6.) He later argues that Dr. Flook's records "confirm a somatic component" and document Hajostek's neurologic symptoms, although he does not develop this argument any further. (Doc. 11 at 22.)

Hajostek does not, however, point to any medical opinions by Dr. Flook that the ALJ did not consider, but instead cites to various treatment notes. Treatment notes generally do not constitute medical opinions. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in your work-

related abilities."). Moreover, an ALJ "is not required to discuss every treatment note in the record." *Sylvia v. Kijakazi*, 2022 WL 795808, at *6 (D. Mont. Mar. 16, 2022). Accordingly, the ALJ was not required to consider the supportability or consistency of Dr. Flook's records under the requirements of 20 C.F.R. §§ 404.1520c, 416.920c.

The ALJ, nonetheless, considered Dr. Flook's records relative to restrictions on Hajostek's work-related abilities, but found them unpersuasive as (1) unsupported by other objective medical findings, and (2) inconsistent with Hajostek's activities, such as traveling to Mexico for a wedding. (A.R. 37.) In August 2018, Dr. Flook's treatment notes provide that he wrote a letter to Hajostek's employer "stating that [Hajostek] has a neurologic deficit that will not allow him to work consistently safely at his job" as a mechanic. (A.R. 614.) The ALJ found this record unpersuasive because it was not supported by a subsequent unremarkable brain MRI, electroencephalogram ("EEG"), head CT, and ambulatory EEGs. These findings are supported by the record. (*See* A.R. 452, 459-61, 473, 685, 689.) She also found his opinion was inconsistent with his activities of daily living, including his ability to travel to Mexico and take part on a wedding cruise. These are legitimate reasons supported by substantial evidence.

Further, the ALJ's decision did consider his neurologic symptoms of dizziness, vertigo, and syncope. (*See* A.R. 23.) Although the ALJ determined his

vestibular disorders symptoms were non-severe, she nonetheless accounted "for some degree of central imbalance" in the RFC by reducing Hajostek's standing/walking hours to four hours, allowing for use of a single point cane, and reducing noise levels in the work environment.  (*Id.*)  Thus, contrary to Hajostek's assertion, the ALJ did consider his neurologic symptoms but found that the objective medical evidence did not lend full support to these complaints.  (*Id.*)

Also, contrary to Hajostek's assertion, the ALJ ultimately agreed with Dr. Flook's treatment note and found that Hajostek is unable to perform any past relevant work, including as a mechanic or a concrete laborer.  (A.R. 38.)  Any error in the ALJ's assessment of Dr. Flook's records is thus harmless.  "To show that an ALJ's error was not harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'"  *Mariah V.A. v. Saul*, 2021 WL 1660947, at *8 (D. Mont. Apr. 28, 2021) (quoting *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)).  Hajostek has not done so here.  In sum, the ALJ's determination as to Dr. Flook is supported by substantial evidence.

### 2.    Dr. Perry, PhD

Hajostek also argues that the ALJ failed to properly consider Dr. Perry's neuropsychological report.  (Doc. 11 at 22.)  The ALJ found Dr. Perry's report unpersuasive because it was unsupported by objective medical evidence and inconsistent with Hajostek's daily activities.  (A.R. 37-38.)

Hajostek was referred to Dr. Perry by his neurologist due to "episodes of 'altered awareness'" to "assess his current cognitive and emotional functioning and to provide recommendations regarding his diagnosis and treatment." (A.R. 665.) Dr. Perry's report contained numerous recommendations to assist Hajostek in managing his physical and emotional health, including therapy/counseling and techniques for managing his daily activities, many of which may be applicable to his ability to work. (*See, e.g.*, A.R. 666, 667 (finding Hajostek may benefit from "[r]epeating or summarizing instructions," "[b]reaking new information into small pieces," "having information delivered in both a verbal and visual format," "eliminating distractions" by having a quiet work environment and removing distracting objects, such as electronics"), 668 (suggesting Hajostek may benefit from using a "to-do" list to organize his daily activities and using a daily planner "to ensure [he] make[s] meetings/classes/work activities").)

The ALJ noted some of Dr. Perry's suggestions in her decision, but later found his opinions to be unpersuasive. In doing so, the ALJ pointed to three isolated entries in the medical record to show Hajostek had "unremarkable clinical exams." (A.R. 37-38.) The ALJ points to one of Hajostek's social security disability exams where his "mental examination revealed [he was] oriented to person, place, and time. [He] was able to demonstrate good judgement and reason, without hallucinations, abnormal affect or abnormal behaviors during the

12

examination.  Patient is not suicidal." (A.R. 640, 642.) But this examiner concluded she "believe[d] [Hajostek] would benefit from a psychiatric exam and establishing care with a counselor given his ongoing physical health decline, personal and familial history of mental illness." (A.R. 645.) The ALJ next cites to a record by Hajostek's neurologist that provided his mental status was normal. (A.R. 661.) This same treatment note, however, states that Hajostek will have a neuropsychology evaluation, and that he "continues to experience recurrent episodes of altered awareness," that "[s]omatization and conversion disorder [were] suspected," and that "[h]is situation is complicated by comorbid psychiatric disease." (A.R. 658-59.) Last, the ALJ cites to one of Dr. Flook's treatment notes that documents Hajostek's mental status as "[a] little bit fatalistic in his speech pattern, but otherwise normal" (A.R. 748-49), but ignores entries in which Dr. Flook expressed concern regarding Hajostek's psychiatric symptoms. (*See* A.R. 522, 536-37, 591, 615.) The entries cited by the ALJ not only contradict themselves, but also the ALJ's own findings acknowledging Hajostek's treatment with medications for his mental impairments and concluding that Hajostek has medically determinable mental impairments. (A.R. 24.) In addition, the ALJ does not explain how Hajostek's ability to travel to Mexico contradicts Dr. Perry's report. (A.R. 38.)

Accordingly, the Court finds the ALJ failed to provide substantial evidence showing that Dr. Perry's report is unpersuasive.

**B.      Consideration of Severe Impairments**

Hajostek appears to argue that the ALJ inadequately considered the medical opinion evidence concerning his vestibular disorder, gastrointestinal symptoms, tinnitus, and mental impairments, resulting in an improper finding that these impairments are non-severe.[2]  (Doc. 11 at 16, 21, 24.)

Under step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.  20 C.F.R §§ 404.1520(c), 416.920.  At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The Social Security Act defines a "severe" impairment as one "which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "An impairment or combination of impairments may be found 'not

---

[2] Hajostek also argues the ALJ failed to consider his bilateral shoulder, cervical, and thoracic impairments.  (Doc. 11 at 19-20.)  In her decision, however, the ALJ found that Hajostek had severe impairments of degenerative joint disease of the bilateral shoulders, degenerative disc disease of the cervical spine post fusion, degenerative disc disease post compression fractures of the thoracic spine.  This argument, therefore, is without merit.

severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290) (emphasis in original). The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

Here, the ALJ found that Hajostek had the following severe impairments: degenerative joint disease of the bilateral shoulders; degenerative disc disease of the cervical spine, status post fusion in 2019; degenerative disc disease/status post compression fractures of the thoracic spine; chronic obstructive pulmonary disease; and mild non-ischemic cardiomyopathy.  (A.R. 23.)

In addition, the ALJ thoroughly discussed Hajostek's vestibular disorders (dizziness, vertigo, and syncope); gastrointestinal impairments, including abdominal pain and diarrhea; tinnitus; hypertension; and his mental impairments.[3] (A.R. 23-26.)  She determined that each was a non-severe impairment because it was not established that the condition would significantly affect Hajostek's ability

---

[3] Further, although Hajostek asserts the ALJ failed to give proper weight to the opinions of his treating physicians regarding these impairments, he fails to identify the providers or the opinions that were allegedly improperly discounted.  The ALJ did consider whether these impairments were severe.   Beyond citing to his testimony and the providers already discussed, Hajostek fails to cite any medical evidence in the record that the ALJ did not consider.  The Court, therefore, does not find that Hajostek has sufficiently placed the ALJ's consideration of any specific treating physician's opinion regarding these impairments at issue.  Thus, the Court finds the ALJ did not err in this regard.

to function/perform basic work activities over a twelve-month period.  (A.R. 23-24.)

Although the ALJ determined these impairments were non-severe, she properly accounted for his vestibular disorder and gastrointestinal ailments in the residual functional capacity.  For example, given Hajostek's vestibular disorder impairments, the ALJ "reduced standing/walking to four hours, allowing for use of a single point cane, and reduced noise levels in the work environment."  (A.R. 23.) Based on Hajostek's reported gastrointestinal symptoms, the ALJ determined he "would require ready access to bathroom facilities during normal work breaks, or every two hours."  (A.R. 24.)

In addition, step two was decided in Hajostek's favor.  Therefore, he was not prejudiced by the failure to include additional severe impairments, and any alleged error is harmless.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Accordingly, the ALJ's finding was supported by substantial evidence, and therefore, the ALJ did not err considering Hajostek's vestibular disorders, gastrointestinal symptoms, tinnitus, or mental impairments.

### C.      Subjective Symptom Testimony

Hajostek argues that the ALJ improperly discounted his subjective symptom testimony without providing clear and convincing reasons for rejecting his

testimony.  (Doc. 11 at 29.)  The Commissioner counters that the ALJ reasonably evaluated Hajostek's testimony.  (Doc. 12 at 5.)

A claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner*, 613 F.3d at 1224 n.3.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Hajostek's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that he is malingering. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Hajostek's subjective testimony about the severity of his symptoms. The Court finds the ALJ did so.

First, Hajostek testified that his gastrointestinal problems cause him to have diarrhea ninety percent of the time, with five-to-six-bathroom breaks required on good days, and three to four days a week with almost constant bathroom use. (A.R. 63-64). The ALJ found this testimony was contradicted by mostly normal gastrointestinal examinations, lack of specialty care, no evidence of weight loss, and medical records which document periodic flareups which typically run its course. (A.R. 23-24.) These findings are support by the record. Nevertheless, to Hajostek's argument that the ALJ ignored his testimony regarding his

gastrointestinal symptoms, the ALJ considered and accounted for this testimony in the RFC and provided that "[h]e must have ready access to bathroom facilities during normal work breaks, or every two hours." (A.R. 33.)

Second, with respect to Hajostek's vestibular disorders, the ALJ noted that he continued to work at a substantial gainful level well after the onset of these symptoms, and that diagnostic MRI, EEG, and CT testing for the condition have all been unremarkable. (A.R. 23.) These findings are supported by the record. Again, however, although the ALJ discounted Dr. Flook's opinion regarding Hajostek's neurological limitations, the ALJ accounted for some vestibular symptoms in the RFC by reducing his standing and walking to four hours, allowing for use of a single point cane, and reducing noise levels. (A.R. 23, 33.)

As to Hajostek's mental health impairments, significantly, the ALJ noted that Dr. Flook's records show Hajostek consistently refused mental health treatment. (*See* A.R. 38; 522 ("I think though patient's unwillingness to address his emotional response to his problems and underlying psychiatric diagnosis is going to greatly complicate things."); 525 ("I did not broach the topic of re-initiating psychiatric consultation. He has been very resistant to this in the past."); 537 ("He though is adamant and his wife readily concurs that he does not need or would benefit from or tolerate any counseling-type intervention or further psych evaluation."); 615 ("I have also again explored the possibility of a psychiatric

19

consultation.  The patient and even more so his wife are very much against this.");
749 ("The patient has consistently refused further psychiatric intervention."); 750
("Patient has persistently declined any further interventions or specialty follow up
for his mental health issues.").)  An "unexplained, or inadequately explained,
failure to seek treatment or follow a prescribed course of treatment" can constitute
clear and convincing reasons to discount a claimant's subjective testimony.  *Fair*,
885 F.2d at 603-04.

The ALJ also addressed Hajostek's degenerative joint disease of his bilateral
shoulders.  (A.R. 34.)  The ALJ noted that Hajostek had a history of bilateral
shoulder pain and left shoulder surgery in 2020, but noted there was no evidence of
further treatment since that time.  (A.R. 34, 529-30, 767-70.)  At the hearing,
Hajostek testified that due to his shoulder impairments, he could pick up a fifty-
pound bag of dog food but could not carry it.  (A.R. 62.)  He also testified that he
cannot reach overhead for very long because his arms go numb.  Considering his
history and testimony, the ALJ found he could lift/carry/push/pull twenty pounds
occasionally and ten pounds frequently and could occasionally reach overhead
with his bilateral extremities.  (A.R. 33, 35.)

Next, the ALJ examined Hajostek's history of degenerative disc disease of
the cervical and thoracic spine.  (A.R. 35.)  The ALJ noted that after Hajostek
underwent a cervical discectomy and fusion at C6-7, he reported that the symptoms

he was experiencing pre-surgery had almost completely resolved.  (A.R. 35, 764.)
Hajostek also has degenerative disc disease and compression fracture of his
thoracic spine, but the ALJ found no evidence of ongoing treatment.  (A.R. 470,
703.)

She also considered Hajostek's chronic obstructive pulmonary disease and
mild non-ischemic cardiomyopathy.  (A.R. 35-26.)  As for his pulmonary disease,
the ALJ determined that, overall, the evidence did not establish significant
findings.  (*See, e.g.*, A.R. 742 (spirometry test finding "minimal obstructive lung
defect"); 747 (normal chest x-ray).)  The ALJ also acknowledged his history of
cardiomyopathy but pointed out that the objective evidence did not show
significant disease.  (A.R.  775 (echocardiogram showing average exercise
capacity, negative for ischemia).)  Nonetheless, the ALJ determined "imposing
limitations on strenuous physical activity," prolonged standing/walking, and
pulmonary irritants was appropriate.  (A.R. 35-36.)

Last, the ALJ found Hajostek's statements about his impairments were
inconsistent with his acknowledged ability to help watch his grandchildren, cook,
and, on good days, complete household chores such as washing dishes, doing
laundry, and sweeping.  (A.R. 36, 58, 66, 283.)  Further, at the hearing, Hajostek
testified that he was able to travel by plane from Montana to Illinois, then by car to
Texas to board a cruise ship and travel to Mexico for a wedding.  (A.R. 70-71.)

21

Collectively, the ALJ determined "[t]hese activities suggest [Hajostek] has not been functionally impaired to the extent alleged." These observations are specific, legitimate reasons for discounting a claimant's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating an ALJ may discount a claimant's subjective complaints when they are inconsistent with the claimant's activities).

Accordingly, although this Court may not have evaluated the evidence in the same way as the ALJ, the Court may not substitute its own interpretations of the evidence for the ALJ's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (stating that as long as the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing.").

The Court therefore finds the ALJ's credibility determination is properly supported by specific, clear and convincing reasons.

### D.    Consideration of Ability to Sustain Work

Hajostek also argues the ALJ improperly ignored Social Security Rulings ("SSR") 96-8p and 16-3p in determining Hajostek's ability to perform sustained work considering his testimony regarding his vestibular disorders, gastrointestinal symptoms, and mental health impairments. (Doc. 11 at 26.)

Residual functional capacity refers to "an individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 61 Fed. Reg. 34474-01, at 34474, 1996 WL 362207 (July 2, 1996). "A 'regular and continuing basis' means 'eight hours a day, for 5 days a week, or an equivalent work schedule.'" SSR 96-8p, 61 Fed. Reg. at 34475. SSR 16-3p relates more specifically to symptom evaluation, and provides that, in considering an individual's treatment history, an ALJ *may* consider factors such as how "[a]n individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

Here, Hajostek argues the ALJ failed to consider his ability to work given his history of vertigo and chronic diarrhea. As discussed above, however, the ALJ did consider this testimony and factored limitations regarding these issues into the RFC. Accordingly, the ALJ did not fail to consider Hajostek's ability to perform sustained work activities on a regular and continuing basis.

### E.   Vocational Expert's Hypothetical

Finally, Hajostek argues the ALJ failed to incorporate all his impairments and limitations into the hypothetical questions posed to the vocational expert. (Doc. 11 at 32.)

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Hajostek argues that the hypothetical the ALJ relied on to find he could perform work was deficient because it did not incorporate all of his limitations. As discussed above, the Court has determined the ALJ failed to properly consider Dr. Perry's report. This error may have infected the hypothetical the ALJ relied on, and in turn, the ALJ's determination that Hajostek could perform work.

The Court, therefore, finds the ALJ's determination at step five is not supported by substantial evidence.

## V.    Remand or Reversal

Hajostek asks the Court to remand this case for proper consideration of all of the medical evidence and vocational evidence, or alternatively for a remand for an award of benefits. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."

24

*Reddick*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall properly evaluate Dr. Perry's report and reconsider whether Hajostek can perform work in the national economy based upon a hypothetical that incorporates all of his impairments and limitations supported by the record.

## VI. Conclusion

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 31st day of March, 2022.

TIMOTHY J. CAVAN
United States Magistrate Judge